NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted March 10, 2010
Decided March 11, 2010

**Before**

WILLIAM J. BAUER, *Circuit Judge*

TERENCE T. EVANS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 09-1446

| | |
|---|---|
| UNITED STATES OF AMERICA, | Appeal from the United States District |
| *Plaintiff-Appellee*, | Court for the Northern District of Illinois, Eastern Division. |
| *v.* | |
| | No. 07 Cr 661-1 |
| JAVAIL WINSTON, | |
| *Defendant-Appellant*. | George W. Lindberg, *Judge*. |

**O R D E R**

Javail Winston pleaded guilty without a plea agreement to one count of bank robbery, admitting that a bank teller handed over $1,540 after he gave her a note threatening to kill her if she refused. *See* 18 U.S.C. § 2113(a). The district court sentenced him to 175 months' imprisonment, well above his applicable guidelines range of 46 to 57 months. Winston filed a notice of appeal, but his appointed lawyers have concluded that the case is frivolous and seek to withdraw under *Anders v. California*, 386 U.S. 738, 744 (1967). We invited Winston to respond to counsel's motion, though he did not. *See* CIR. R. 51(b). Because counsel's brief is facially adequate, we limit our review to the potential issues he has identified. *United States v. Cano-Rodriguez*, 552 F.3d 637, 638 (7th Cir. 2009) (per curiam); *United States v. Schuh*, 289 F.3d 968, 973-74 (7th Cir. 2002).

This case marks Winston's sixth bank robbery and tenth felony conviction. Between December 1980 and June 1981, Winston committed a series of four armed robberies yielding four convictions, two each in federal and state court. Winston added a fifth conviction, for escape, after he fled the state courthouse following his sentencing for the bank robberies. Even so, he was released from custody in October 1990, and about eight months later he embarked on another crime spree, robbing two women and his fifth bank. For the bank robbery he was sentenced in federal court as a career offender to 168 months' imprisonment, and for the other robberies he was sentenced in an Illinois court to a total of 11 years to run concurrently with the federal sentence. After his release in 2004, Winston was suspected of committing three additional bank robberies before he was arrested for his current offense in October 2007.

Despite this extensive criminal history, the probation officer calculated a total offense level of 21 and a category III criminal history, yielding an imprisonment range of just 46 to 57 months. That is because only four criminal history points total were assessed for the fifth bank robbery and a 2006 conviction for driving while intoxicated. Many of his other convictions were too old to count, and he also caught a very lucky break: neither of his most-recent state convictions for robbery were counted because those sentences were never reported to, or recorded in the records of, the Illinois Department of Corrections.

The government moved for an above-guidelines sentence, arguing that Winston's criminal history category did not reflect the seriousness of his criminal past and the great likelihood of his recidivism. Although this time the career-offender guideline, U.S.S.G. § 4B1.1, did not apply, the government argued that Winston should be sentenced again as though he was a career offender within the range of 151 to 188 months. The government also urged the district court to assess a sentence longer than the 168 months Winston received for his fifth bank robbery, which had not been a sufficient deterrent.

Winston conceded that his category III criminal history under-represented his criminal history but argued that a sentence within the career-offender range would be too harsh. Instead, he proposed a sentence of 100 to 125 months in prison. Winston apologized for his actions and explained that his robbery was "an act of desperation" to prevent his family from being evicted from their home. The district court, however, noted the obvious pattern of behavior and how quickly Winston had resumed his criminal behavior after being released from prison. Incarceration, the court reasoned, was the only way to protect the public from Winston, and the court was convinced that the only reason Winston had not committed more robberies was because he was in prison most of his adult life. The court agreed with the government that the new term should exceed 168 months and imposed a sentence of 175 months' imprisonment.

In their *Anders* submission counsel note that Winston wants his guilty plea set aside, so they examine the plea colloquy for a possible appellate claim. *See United States v. Knox*, 287 F.3d 667, 670-72 (7th Cir. 2002). But counsel have noticed only one shortcoming in the colloquy: the district court did not advise Winston of his right at trial to present evidence on his own behalf. *See* FED. R. CRIM. P. 11(b)(1)(E). Because Winston did not move to withdraw his plea in the district court, our review would be for plain error. *See United States v. Vonn*, 535 U.S. 55, 59 (2002); *United States v. Villarreal-Tamayo*, 467 F.3d 630, 632 (7th Cir. 2006).

It would be frivolous to argue that the district court committed plain error. The court essentially informed Winston of his right to present evidence when it explained that he could testify in his own defense and compel others to testify for him. And Winston cannot claim to be ignorant of that right because the information was covered in Winston's written plea declaration, which he acknowledged having read and understood. *See United States v. Blalock*, 321 F.3d 686, 688-89 (7th Cir. 2003); *United States v. Driver*, 242 F.3d 767, 771 (7th Cir. 2001). Therefore, we would not find that this minor omission affected Winston's decision to plead guilty. *See United States v. Griffin*, 521 F.3d 727, 730 (7th Cir. 2008); *United States v. Cross*, 57 F.3d 588, 591 (7th Cir. 1995).

Counsel also have considered arguing that Winston's prison sentence, which is 118 months above his guidelines range, is unreasonably high. We would uphold as reasonable a sentence that exceeds the range recommended by the guidelines as long as the district court applies the factors set forth in 18 U.S.C. § 3553(a) and articulates an adequate statement of its reasons for imposing the sentence. *See United States v. Hurt*, 574 F.3d 439, 442 (7th Cir. 2009); *United States v. Wise*, 556 F.3d 629, 632-33 (7th Cir. 2009); *United States v. Tockes*, 530 F.3d 628, 632 (7th Cir. 2008).

Counsel correctly conclude that this argument would be frivolous because the district court thoroughly analyzed the § 3553(a) factors and amply justified sentencing Winston to 175 months. The court explained that Winston's professed financial hardship did not "lessen the violent impact that the crime undoubtedly had on the persons present during the bank robbery" and those in the surrounding community. The court recounted Winston's pattern of robberies (several of which occurred while he was still on probation or parole) and the violent nature of his criminal history, and concluded that a guidelines range of 46 to 57 months would not adequately deter Winston from criminal behavior or protect the public when his prior 168-month sentence had failed to do so. And the court surmised that Winston's criminal history score, which already under-represented his criminal record, would likely be even higher had Winston not been in prison from 1992 to 2004 and thus prevented from committing other crimes during the 15-year period the guidelines look to for his criminal history. We have affirmed above-range sentences in similar cases where the

defendant's criminal history did not adequately account for his extensive criminal conduct. *See United States v. Jackson*, 576 F.3d 465, 470 (7th Cir. 2009); *United States v. Jackson*, 547 F.3d 786, 793-94 (7th Cir. 2008); *United States v. McIntyre*, 531 F.3d 481, 484 (7th Cir. 2008) (per curiam); *United States v. Valle*, 458 F.3d 652 (7th Cir. 2006). Moreover, although the district court did not address the clerical error that resulted in the two 1992 state robberies being excluded from Winston's criminal history, this fluke would also be a reason for the district court to depart so far above the guidelines range. *See McIntyre*, 531 F.3d at 483-84. If these two robberies had been scored, Winston would have qualified as a career offender under § 4B1.1.

Finally, counsel consider whether Winston could challenge the district court's failure to specify the number of drug tests he must undergo while on supervised release. The district court should have set the number of required drug tests. 18 U.S.C. § 3583(d); *United States v. Bonanno*, 146 F.3d 502, 511 (7th Cir. 1998). But Winston said nothing about the omission at sentencing, and the error is not one that we would correct on plain-error review. *See United States v. Harvey*, 484 F.3d 453, 458-59 (7th Cir. 2007); *United States v. Tejeda*, 476 F.3d 471, 475 (7th Cir. 2007). Thus, we agree with counsel that it would be frivolous to raise this point on appeal.

Accordingly, we GRANT counsel's motion to withdraw and DISMISS the appeal.