Affirmed by unpublished PER CURIAM opinion. Judge DIAZ wrote a dissenting opinion.
Unpublished opinions are not binding precedent in this circuit.
PER CURIAM:
Joshua Gerald Larrimore (“Appellant”) challenges his sentence of 74 months’ imprisonment, imposed as a result of his pleading guilty to a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) for unlawful possession of a firearm. Appellant argues the district court erred by concluding Appellant possessed a firearm in connection with a larceny for purposes of the four-level enhancement authorized by the United States Sentencing Guidelines (“Sentencing Guidelines” or “U.S.S.G.”). See U.S.S.G. § 2K2.1(b)(6)(B). Because the firearm at issue was the object of the. larceny, we likewise conclude Appellant possessed the firearm in connection with the larceny. Accordingly, we affirm Appellant’s sentence.
I.
A.
On July 5, 2012, Appellant reported a housebreaking in the home he shared with his mother and her boyfriend, Vernon Britt. When a Winston-Salem Police Department officer responded to a housebreaking call, Appellant claimed someone had broken into the house and pried open Britt’s gun safe.[1] Shortly thereafter, the *170 officer searched the gun safe, where he found six firearms. The officer then called Britt and described the firearms; Britt confirmed that six firearms were kept in the gun safe. Both Britt and Appellant gave permission for the gun safe to be dusted for fingerprints. Appellant offered that he had tried to repair the gun safe, so his prints would be found, and that one of his brothers was likely responsible for the housebreaking. The officer then began to canvas the neighborhood.
Upon returning to the house, the officer went back to the gun safe and noticed that five — not six — firearms remained in the gun safe. A .38-caliber Smith & Wesson revolver had vanished. Although he had been the only person in the house at the time the firearm disappeared, Appellant denied any knowledge of what had happened to the now-missing firearm. Ultimately, Appellant admitted he hid the firearm under a vehicle in the backyard. He claimed he did so in an effort to protect his stepbrother, who Appellant alleged used the firearm to commit a murder. The firearm was subsequently recovered.
Having agreed to an interview with detectives, Appellant proceeded to the police station, where he admitted he broke into the gun safe. He also admitted he later took the firearm and hid it with the intent of selling it later. The tale of his murderous stepbrother was mere fiction.
Appellant had previously been convicted of felony attempted armed robbery on June 11, 2008; his right to possess firearms had not been restored as of July 5, 2012. On October 29, 2012, a federal grand jury returned a single-count indictment, charging Appellant with unlawful possession of a firearm pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2). On February 4, 2013, Appellant pled guilty as charged.
B.
Before sentencing, the United States probation officer completed a presentence investigation report (“PSR”). The PSR calculated Appellant’s base offense level under section 2K2.1 of the Sentencing Guidelines as 20. A two-level enhancement was added because the firearm was stolen and a four-level enhancement was added because the firearm was possessed in connection with another felony (i.e., felony safecracking). See U.S.S.G. § 2K2.1(b)(4)(A), (b)(6)(B). After applying a three-point reduction for acceptance of responsibility, the PSR set Appellant’s total offense level at 23. Id. § 3El.l(a) (accepting of responsibility); id. § 3El.l(b) (assisting authorities). The offense level, considered in combination with Appellant’s applicable criminal history category of IV, resulted in a Sentencing Guidelines range for imprisonment of 70 to 87 months.
Prior to and during the sentencing hearing, Appellant objected to the application of the four-level enhancement for possession of a firearm in connection with another felony. Appellant argued he did not possess the firearm during the commission of the safecracking; rather, he argued, the firearm was taken after this felony was completed.
At the May 31, 2013, sentencing hearing, the district court applied the four-level enhancement — but not because Appellant possessed the firearm in connection with felony safecracking. The district court concluded the safecracking statute only related to “essentially the unlawful opening of the safe.” J.A. 99.[2] Therefore, because the safecracking felony was complete when *171 the safe was opened, the district court concluded the facts did not support the recommended enhancement on that basis.
The district court nonetheless concluded that the application of the enhancement was, instead, predicated on felony larceny of the firearm. The district court noted that facilitation, for purposes of section 2K2.1(b)(6)(B), includes circumstances when “the theft could not have occurred without the actual taking of the firearm” and when the firearm could provide assistance in escaping. J.A. 98. Because Appellant took possession of the firearm as part and parcel of the larceny, the district court applied the recommended four-level enhancement.
After considering the Sentencing Guidelines, as well as the factors set forth in 18 U.S.C. § 3553(a), the district court imposed a sentence of 74 months’ imprisonment, a sentence at the lower end of the advisory guidelines. Discussing the enhancements, the district court explained,
[these] adjustments, collectively, result in a significant increase in [Appellant’s] guideline range while at the same time perhaps this does not reflect some of the more serious iterations or variations that might support [these] adjustments, and, therefore, I find that a sentence of 74 months is sufficient but not greater than necessary.
J.A. 123.
Appellant timely appealed. We possess jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.
When reviewing a district court’s application of the Sentencing Guidelines, factual findings are reviewed for clear error and legal conclusions are reviewed de novo. See United States v. Adepoju, 756 F.3d 250, 256 (4th Cir.2014). “Where a [Sentencing] Guidelines application involves a mixed question of law and fact, the applicable standard turns on the nature of the circumstances at issue. If the application is ‘essentially factual,’ we apply the clearly erroneous standard.” Id. (quoting United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir.1989)).
III.
The applicable section of the Sentencing Guidelines for a conviction pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2) is section 2K2.1. Because Appellant committed the offense at issue after sustaining a felony conviction for a crime of violence, his base offense level was 20. U.S.S.G. § 2K2.1(a)(4)(A). Section 2K2.1 also outlines various specific offense characteristics that may be applied to increase the offense level. Id. § 2K2.1(b). At issue here is the four-level enhancement that applies in cases where an individual “used or possessed any firearm or ammunition in connection with another felony offense.” Id. § 2K2.1(b)(6)(B). Accordingly, this appeal turns on the definition of “in connection with” as it is used in section 2K2.1(b)(6)(B).[3] The Sentencing Guidelines generally note that this enhancement *172 applies “if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively.” Id. § 2K2.1 cmt. n. 14(A).
As the district court concluded, in this case the nexus between the firearm and the larceny is sufficient because the firearm was the fruit of the larceny; in other words, “the theft could not have occurred without the actual taking of the firearm.” J.A. 98. Facilitation and the phrase “in connection with” are not narrowly construed to encompass only those circumstances where a firearm emboldens an individual or is used for protection. Instead, these concepts are expansive. Smith v. United States, 508 U.S. 223, 237-38, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993).[4] The district court’s decision that these concepts extend to those instances where a firearm is the fruit of a felony offense — where it is the object of the offense — comports with our jurisprudence and was not, therefore, erroneous.
We have held that a firearm is used “in connection with” another felony where it facilitates, or has some purpose or effect, in relation to the underlying felony and when its presence is neither coincidental or accidental. United States v. Blount, 337 F.3d 404, 411 (4th Cir.2003).[5] We opined in Blount that the Government could have established the firearm at issue was used in connection with a burglary “by showing, for example, that the defendant actually used the stolen weapon to intimidate occupants of the home, or that he prepared for this contingency by keeping the firearm close at hand.” Blount, 337 F.3d at 411; see also United States v. Hampton, 628 F.3d 654, 663 (4th Cir.2010) (noting firearm was possessed in connection with another offense because the appellant “had the weapon close at hand and, more importantly ... made multiple attempts to access it during the course of the assault”).
These examples are not exclusive. A firearm can have purposes beyond emboldening an individual, making an escape easier, or frightening victims. Here, the firearm was itself a necessary component of the offense. To hold, therefore, that Appellant used it in connection with another felony is consistent with our reasoning in Blount that the firearm have some purpose of effect in relation to the underlying felony. Cf. United States v. Schaal, 340 F.3d 196, 198 (4th Cir.2003) (“[A]n enhancement of four levels [was applied] because [the appellant] possessed or used at least one of the weapons in connection with another felony offense — inter alia, the state-law breaking and entering and larceny offenses that produced the stolen weapons.” (citations omitted)). The Seventh, Eighth, and Tenth Circuits have taken this position. See United States v. Marrufo, 661 F.3d 1204, 1207-08 (10th Cir.2011) (tampering with firearm); United States v. Pazour, 609 F.3d 950, 954 (8th Cir.2010) *173 (theft of firearm); United States v. Wise, 556 F.3d 629, 632 (7th Cir.2009) (presence of firearm recklessly endangered children).
As the Eighth Circuit observed in Paz-our, a firearm can facilitate a larceny when 'the firearm is the object stolen. 609 F.3d at 954. There, the appellant was holding a rifle and two shotguns for a friend; he then pawned all three guns and was, consequently, charged with being a felon in possession of a firearm. See id. at 951. The district court applied a four-level enhancement because the firearms were possessed in connection with a felony theft. See id. at 954. Although the Pazour appellant had permission to hold the firearms, “the firearms became stolen when [the appellant] pawned them.” Id. The Pazour court concluded that “without [the appellant’s] possession of the firearms, he would not have been able to steal the firearms by pawning them — in other words ... the firearms facilitated the theft because the firearms were the stolen articles of the theft itself.” Id.
Similarly, the Tenth Circuit concluded that a firearm facilitated tampering with evidence because the firearm itself was the subject of the tampering. See Marrufo, 661 F.3d at 1207-08. The appellant in Marrufo was charged with possession of a firearm by a felon, and the district court applied a four-level enhancement because the appellant had tampered with evidence by hiding the firearm used in the commission of second-degree murder. See id. at 1206. Because New Mexico law required some variety of manipulation of evidence to prove tampering with evidence, the Marrufo court determined “it would be harder for a defendant to commit the crime of tampering with evidence ... if he did not physically possess the evidence.” Id. at 1207; see also Wise, 556 F.3d at 632 (holding that, “by carelessly leaving his loaded gun in a location accessible to children,” the appellant possessed a firearm in connection with felony willful endangerment offense).
In this appeal, we are presented with almost identical circumstances as those presented in Pazour and Marrufo. Here, the district court relied on Pazour and found that the other felony offense necessary for purposes of the four-level enhancement was a larceny and that the factual predicate for this offense was Appellant’s theft of a firearm. Without the firearm, there was no larceny; so the firearm had a purpose or effect in relation to the felony — it was the fruit of the crime. Because the firearm was the fruit of the crime, the district court determined possession of the firearm was “in connection with” the larceny.
Blount does not preclude the district court’s conclusion because Pazour is consistent with Blount; Marrufo is likewise consistent with Blount. Pazour and Mar-rufo required a sufficient nexus between a firearm and a felony offense for enhancement purposes. In each case, there was a sufficient nexus because the presence or possession of the firearm was part and parcel of the felony at issue. The Pazour appellant possessed the firearm, by theft, allowing him to sell it; the Marrufo appellant possessed the firearm, allowing him to tamper with it.
Pazour and Marrufo also recognize, as Blount mandates, that an individual’s possession of a firearm cannot be a mere accident or coincidence. See Blount, 337 F.3d at 411 (“[A firearm’s] presence or involvement cannot be the result of accident or coincidence.” (quoting Smith, 508 U.S. at 238, 113 S.Ct. 2050) (internal quotation marks omitted)). In each case, possession was purposeful. See Pazour, 609 F.3d at 954; Marrufo, 661 F.3d at 1207. Here, too, Appellant’s possession of a firearm was no accident or coincidence. J.A. *174 95 (“[Appellant] admitted that he broke into the safe, admitted that he took the firearm and planned to sell it...
At bottom, the reasoning of the district court fulfills the requirements of Blount. The firearm had some purpose in relation to the larceny (i.e., it was the object of the larceny), and Appellant’s possession was not accidental or coincidental. Accordingly, the district court did not err by applying a four-point enhancement pursuant to § 2K2.1(b)(6)(B).[6]
IV.
Pursuant to the foregoing, Appellant’s sentence is

AFFIRMED.

. The presentence investigation report referred to the safe specifically as a gun safe. *170 Neither party objected to this characterization.

. Citations to the “J.A.” refer to the Joint Appendix filed by the parties in this appeal.

. The Government also asserted in its brief and at argument that application note 14(B) of section 2K2.1 compels a four-level enhancement because burglary and safecracking are similar offenses. Application note 14(B) permits a four-level enhancement pursuant to section 2K2.1(b)(6)(B) "in a case in which a defendant who, during the course of a burglary, finds and takes a firearm” and “in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia.” U.S.S.G. § 2K2.1 cmt. n. 14(B). Because we affirm the district court's decision to apply the enhancement due to the larceny but not the safecracking, we need not reach this issue.

. The relevant language in Smith was "in relation to,” but "when interpreting ‘in connection with,’ we continue to treat the phrases as synonymous and to rely on our cases interpreting ‘in relation to.’ " United States v. Jenkins, 566 F.3d 160, 162 n. 2 (4th Cir.2009).

. In Blount, we held the Government did not present any evidence that the firearm at issue was used "in connection with” the burglary committed by the appellant. Blount preceded application note 14(B) and is, therefore, partially abrogated by adoption of application note 14(B) because the note compels application of a four-point enhancement if a firearm is stolen in the course of a burglary. However, the general principle of Blount — that is, that a firearm must have some purpose in relation to the offense and its involvement or presence cannot be mere accident or coincidence — remains applicable in this circuit. See, e.g., Jenkins, 566 F.3d at 162-63 (relying on the general principles set forth in Blount).

. We note the district court also concluded the firearm had the potential to facilitate the larceny because it could have been used to assist Appellant in escaping if he had been confronted while absconding with the firearm. Although Blount suggests there must be some intent to use a firearm to support such enhancement, it is unclear whether such a heightened showing is required in the post-Blount landscape. Compare Blount, 337 F.3d at 411 (requiring the Government to show "the defendant actually used the stolen weapon to intimidate occupants of the home, or that he prepared for this contingency by keeping the firearm close at hand”), with U.S.S.G. § 2K2.1 cmt. n. 14(A) (requiring only a finding that "the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense” (emphasis added)). We need not decide whether this ground is sufficient to support an enhancement because we affirm the sentence on the above-discussed grounds.